SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

MARK KROTOSKI (CABN 138549)
Chief, Criminal Division

MICHELLE MORGAN-KELLY (DEBN 3651)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510)637-3705
   Facsimile: (510)637-3724
   michelle.morgan-kelly@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-00323 DLJ |
| Plaintiff, | ) | |
| v. | ) | GOVERNMENT'S MOTION FOR REVOCATION OF RELEASE ORDER |
| JAMES EARL KELLEY, (a/k/a, "SCOOTER"), | ) | **The Honorable D. Lowell Jensen** |
| Defendant. | ) | |

   The United States of America, by and through its undersigned counsel, hereby moves this honorable Court for an order revoking the release order entered in the above-captioned case by Magistrate Judge Wayne D. Brazil on July 13, 2007. As set forth in more detail below, defendant's lengthy criminal history involving narcotics trafficking and, most recently, a loaded firearm, culminated in a high speed chase with police in which defendant rolled his car on the Bay Bridge while attempting to escape. In light of these facts, no set of conditions can ensure defendant's appearance and the safety of the community, and detention is necessary.

## FACTS

   On August 3, 2006, at the direction of the Oakland Police Department (OPD), a confidential source (CS) arranged the purchase of 3 ounces of crack cocaine from defendant,

1  which was conducted under OPD surveillance. Defendant sold an additional 3 ounces of crack
2  cocaine to the CS on November 1, 2006, and the sale was captured on video and audio tape.
3       On January 17, 2007, the CS ordered 9 ounces of crack cocaine from defendant over the
4  telephone, and the conversation was recorded. Defendant said that he would go cook the crack
5  for the CS, and OPD then initiated surveillance at defendant's home. Defendant was observed
6  arriving at and later departing from his residence with his girlfriend, Erika Keller, and heading in
7  the direction of the CS.
8       OPD attempted a traffic stop, at which point defendant fled on Interstate 880 northbound,
9  weaving in and out of traffic. As he headed toward the Bay Bridge, defendant threw a package,
10 later determined to be approximately 9 ounces of crack cocaine, out the window. While speeding
11 away from police, defendant called the CS on the phone and screamed, "You set me up!" He
12 then continued speeding over the Bay Bridge. Fearing for the safety of the community given
13 defendant's erratic driving, OPD executed an emergency stop manuever. Defendant's car rolled
14 three times, and he was placed under arrest with only minor injuries. The car was searched, and
15 police found over $1100 in cash and a small amount of crack cocaine in the passenger
16 compartment.
17      Pursuant to a state search warrant, a search was then conducted at defendant's residence,
18 resulting in the seizure of 5 ounces of powder cocaine hidden among coffee grounds in a vacuum
19 cleaner, and approximately 1 ounce of crack cocaine, a scale, a beaker with residue, baggies, and
20 a razor blade from the kitchen. In addition, in the master bedroom of the residence where minor
21 children also resided, police found a loaded 9 mm handgun with an obliterated serial number.
22      Defendant was indicted on May 24, 2007 on two counts of distribution of cocaine base
23 under 21 U.S.C. § 841(a)(1), two counts of possession with intent to distribute cocaine base
24 under 21 U.S.C. § 841(a)(1), one count of possession with intent to distribute cocaine under 21
25 U.S.C. § 841(a)(1), and one count of felon in possession of ammunition under 18 U.S.C. §
26 922(g).
27
28 GOV'T MOTION FOR REVOCATION OF RELEASE ORDER
   CR 07 00323 DLJ

**DETENTION PROCEEDINGS**

A detention hearing was held before the Honorable Wayne D. Brazil on June 12, 2007, June 21, 2007, and July 13, 2007. Defendant's criminal history was noted in the Pre-Trial Services Report to include a 1993 felony conviction for possessing/purchasing crack cocaine for sale, which also involved a firearm, and a 2002 misdemeanor conviction for vandalism arising out of an original charge for domestic violence. The Report also discloses arrests in 1988 for battery, 1990 for kidnapping, and 1991 for kidnapping and battery. The PTS Report also indicated that in his entire life, defendant could account for employment for only approximately three years, and that he had difficulty identifying any address as his residence.

Pre-Trial Services recommended that defendant be detained. The government sought detention based on all of the facts outlined above, asserting that defendant poses a serious danger to the community and flight risk that cannot be adequately addressed through any conditions of release. In addition to the facts set forth above, the government provided the court with information from a prior police report involving domestic violence.

Despite the government's detention request, Magistrate Judge Brazil ordered on July 13, 2007 that defendant be released to a halfway house, with the posting of a $250,000 bond partially secured by defendant's mother's residence. Magistrate Brazil also required that seven persons sign as sureties, excluding defendant's elderly grandmother, who was determined by the court to be incompetent to sign or to post her property.

**LEGAL STANDARD**

Title 18, United States Code, Section 3145(a)(1) provides in pertinent part that:

> If a person is ordered released by a magistrate judge, . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

18 U.S.C. § 3145(a)(1). This Court reviews the magistrate judge's decision de novo. United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990). In reviewing a magistrate judge's detention order, the district court should conduct its own independent determination of whether

GOV'T MOTION FOR REVOCATION OF RELEASE ORDER
CR 07 00323 DLJ

3

the magistrate judge's findings are correct with no deference to the magistrate judge's findings or conclusions. Id. at 1193. In conducting this de novo review, the district court may hold additional evidentiary hearings, but is not required to do so. Id.

Title 18, United States Code, Section 3142(e) requires that the magistrate fashion a set of conditions that will reasonably assure both the defendant's appearance and the safety of the community if defendant is to be released. 18 U.S.C. § 3142(e). There is a rebuttable presumption of dangerousness and risk of flight in cases in which defendant is charged with a controlled substance offense carrying a maximum term of imprisonment of more than 10 years. Id.

In a presumption case, the government maintains the burden of persuasion, which entails showing by clear and convincing evidence that defendant is a danger to the community or by a preponderance of the evidence that defendant is a flight risk. United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). Title 18, United States Code, Section 3142(g) specifies the various factors that must be considered in this context. They include the following: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, employment, past conduct, history relating to drug and alcohol abuse, criminal history and record concerning appearance at court proceedings; (4) whether at the time of the offense or arrest the person was on probation, parole or on other release pending trial; and (5) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); see also Gebro, 948 F.2d at 1121. Of these factors, the weight of the evidence is the least important. Id.

## ARGUMENT

**I. Defendant Poses A Danger To The Community and Flight Risk That Can Only Be Addressed By Detention.**

As indicated above, several factors demonstrate defendant's danger to the community and risk of flight that no set of conditions will resolve, including the nature and seriousness of the

GOV'T MOTION FOR REVOCATION OF RELEASE ORDER
CR 07 00323 DLJ

4

offense charged, the weight of the evidence, character, employment, past conduct, criminal history, and the nature and seriousness of the danger defendant poses to the community.

With respect to the nature and seriousness of the offense charged and the weight of the evidence, defendant faces a six-count indictment charging him with trafficking in crack cocaine over the course of several months and with possessing a loaded firearm while being a convicted felon. Some of defendant's drug activities were captured on audio and/or video tape. The amounts of drugs involved were substantial, so that if convicted, defendant faces a mandatory minimum penalty of ten years' imprisonment, and if his prior narcotics conviction is filed, a mandatory minimum penalty of 20 years' imprisonment. He faces a maximum prison sentence of life.

With respect to defendant's character, employment and residential history, of his entire life, he can only recall 3 years total during which he was employed. He also had difficulty providing a residential address because he has stayed in various locations. Though many of the people expected to sign as sureties have known defendant for many years, none of them have had substantial enough impact to dissuade defendant from engaging in criminal activity.

Most importantly, the danger defendant poses is substantial. Defendant certainly placed his family, his neighbors, and the community at large in danger on January 17, 2007, and as noted by Magistrate Brazil at the hearing on July 13, 2007, seems willing to sacrifice anyone and anything to protect himself. He kept a loaded gun with an obliterated serial number in his residence where children were living in order to protect himself from other drug dealers, openly maintained crack cocaine and related paraphernalia in the home, and led police on a high-speed chase over heavily-traveled freeways with his girlfriend in the car in order to evade arrest. Also of concern is defendant's significant criminal history, including a conviction for narcotics trafficking involving a firearm, and numerous arrests for violent offenses, at least one of which appears to have been related to domestic violence.

The solution fashioned by Magistrate Brazil - that defendant post bond and live in a

GOV'T MOTION FOR REVOCATION OF RELEASE ORDER
CR 07 00323 DLJ

5

halfway house in Oakland - cannot adequately address these concerns. No one can require defendant to remain at the halfway house. Residents are supposed to "check in" and "check out" and indicate, on an honor system, where they are going. A halfway house, under any set of illusory "restrictions," simply does not provide the type of supervision that is necessary to protect the community and preclude defendant's flight. Even if the bond imposed might reduce defendant's flight risk because his mother's house will be at stake, nothing short of detention can adequately protect the community.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court revoke Magistrate Judge Brazil's order of release, and order the defendant detained.

DATED: July 16, 2007                    Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

\s\
MICHELLE MORGAN-KELLY
Assistant United States Attorney