JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

GARTH HIRE (CABN 187330)
Assistant United States Attorney

   1301 Clay Street, Suite 340-S
   Oakland, California 94612
   Telephone:  (510) 637-3929
   Facsimile:   (510) 637-3724
   E-Mail:      Garth.Hire@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                  )<br>    Plaintiff,                    )<br>                                  )<br>    v.                            )<br>                                  )<br>JAMES EARL KELLEY,                )<br>                                  )<br>    Defendant.                    )<br>_____) | No. CR 07-00323 DLJ<br><br>UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT JAMES EARL KELLEY<br><br>Hearing Date:  August 29, 2008<br>Hearing Time:  10:00 a.m. |

# I.

# INTRODUCTION

Defendant James Earl Kelley, also known as ("aka") "Scooter" (hereafter, defendant), is an armed drug dealer who led police on a high speed chase through Oakland and eventually crashed his truck on the Bay Bridge at rush hour. For the reasons set forth below, the government respectfully requests that this Court, after considering the advisory sentencing guidelines and the factors set forth in 18 U.S.C. § 3553(a), sentence defendant to the high-end of the applicable guideline range and impose a sentence of 168 months imprisonment, a five-year term of supervised release, and a special assessment of $100.

# II.

# PROCEDURAL HISTORY

On May 24, 2007, a federal grand jury indicted defendant for Distribution of Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) (Counts 1, 2); Possession with Intent to Distribute Crack Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(ii) (Counts 3, 4); Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (Count 5); and Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1) (Count 6).[1] On May 23, 2008, defendant pleaded guilty to Count 1 pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). The government agreed to dismiss the remaining counts at sentencing. The Court ordered the United States Probation Office (USPO) to prepare a presentence report (PSR). A sentencing hearing is scheduled for August 29, 2008.

# III.

# FACTUAL SUMMARY

The facts in this case are set forth in defendant's plea agreement (paragraph 2),[2] Oakland

---

[1] Defendant was not charged with felon in possession of a firearm because the semi-automatic pistol possessed by defendant was manufactured in California. Accordingly, defendant was only charged with possessing the ammunition contained in the magazine of the firearm.

[2] A copy of the plea agreement is attached as Exhibit A.

UNITED STATES' SENTENCING MEMORANDUM
FOR DEFENDANT JAMES EARL KELLEY          1

Police Department (OPD) reports and photographs,[3] the PSR, and statements made by defendant during his "safety valve" proffer.

### A.  Defendant Distributed 78.3 Grams of Crack Cocaine

On or about August 3, 2006, defendant met with an individual for the purpose of providing him cocaine base in the form of crack cocaine in exchange for cash. At the meeting, which was preceded by a number of telephone calls between defendant and the individual, defendant knowingly distributed 78.3 grams of a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine to the individual in exchange for cash. Defendant knew at the time he delivered the crack cocaine to the individual that the substance was crack cocaine. *See* Ex. A.

### B.  Defendant Distributed 80.5 Grams of Crack Cocaine

On or about November 1, 2006, defendant met with the same individual for the purpose of exchanging crack cocaine for cash. After a number of telephone calls between defendant and the individual, defendant met with the individual and distributed 80.5 grams of a mixture and substance containing a detectable amount of crack cocaine to the individual in exchange for cash. Defendant knew at the time he delivered the crack cocaine to the individual that the substance was crack cocaine. *See* Ex. A.

### C.  Defendant Fled From Police in a High Speed Chase and Discarded 213.6 Grams of Crack Cocaine Before Crashing on the Bay Bridge at Rush Hour

On or about January 17, 2007, defendant received a telephone call from the individual in which he stated that he wanted a "9 volt battery" and that he wanted it "charged." Defendant understood the individual to mean that he wanted to purchase nine ounces of crack cocaine from defendant in exchange for cash. Prior to the scheduled meeting with the individual, defendant

---

[3] A copy of OPD reports describing defendant's flight and arrest are attached as Exhibit B. A copy of photographs taken of the Bay Bridge, defendant's vehicle, and a police vehicle following the chase and arrest of defendant are attached as Exhibit C. A copy of photographs taken during the execution of the search warrant at the Adeline Street apartment are attached as Exhibit D. A copy of photographs taken of the master bedroom closet and the loaded firearm inside the closet are attached as Exhibit E. A copy of an OPD report detailing defendant's arrest in 1992 while possessing narcotics and a gun in his bedroom closet is attached as Exhibit F.

stopped at the apartment he shared with his then-pregnant girlfriend Erika Keller and her two minor children on Adeline Street, in Oakland, California. Defendant then left the location in truck, accompanied by Keller, and drove towards the meeting location. Prior to his arrival at the meeting location, however, at approximately 4:00 p.m., law enforcement personnel using emergency lights and sirens tried to conduct a traffic stop of defendant. He refused to yield to the police and instead sped north on interstate 880. *See* Exs. A, B.

While fleeing from the police, defendant threw a baggie containing approximately 213.6 grams of a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine out of the window of his truck in an attempt to prevent it from being seized by law enforcement personnel. Defendant then drove in an erratic manner at high speeds and weaved in and out of traffic in an attempt to elude the police and drove west on interstate 80 towards the Bay Bridge. As defendant drove west on the Bay Bridge the police executed an emergency stop procedure and defendant's truck rolled multiple times before it came to a stop on the bridge. By acting in the manner described above defendant recklessly created a substantial risk of death or serious bodily injury to agents, officers, and the public in the course of fleeing from law enforcement personnel. Defendant was subsequently arrested. He was in possession of $1,174 and an additional 1.5 grams of a mixture and substance containing a detectable amount of cocaine base in the form of crack cocaine in his vehicle. The cash was drug proceeds in the following denominations: one fifty-dollar bill; forty-three twenty-dollar bills; eight ten-dollar bills; twenty-six five-dollar bills; and fifty-four one-dollar bills. *See* Exs. A, B, C.

      **D.**    **Police Executed a Search Warrant at the Adeline Street Apartment While Children Were Present and Found Crack Cocaine, Powder Cocaine, and a Loaded Semi-Automatic Pistol with an Obliterated Serial Number**

The police later searched defendant's apartment on Adeline Street pursuant to a search warrant. Keller's mother and Keller's two children, ages ten and seven, were inside the residence. During the execution of the search warrant, the police found: (1) a large black plastic bag containing coffee grounds and three smaller clear plastic baggies containing 23.5 grams of crack cocaine and three plastic baggies containing 124.2 grams of powder cocaine inside a

UNITED STATES' SENTENCING MEMORANDUM
FOR DEFENDANT JAMES EARL KELLEY    3

vacuum intake bag; (2) a plastic bowl containing a razor blade and cocaine residue on the dining room table; (3) a black digital scale on top of the dining room table; (4) a 600 ml glass beaker with cocaine residue in the kitchen sink; (5) several plastic sandwich baggies containing cocaine residue in the kitchen garbage; (6) baking soda boxes in the kitchen garbage; (7) a black digital scale in a kitchen drawer; (8) five items of indicia bearing the name of James Kelley and the Adeline Street address in the master bedroom upstairs; and (9) a Lorcin 9mm pistol with an obliterated serial number loaded with ten rounds of 9mm ammunition on a shelf in the master bedroom closet.  *See* Exs. B, C, D, and E.

Defendant admitted in his plea agreement that he knowingly possessed the narcotics and narcotics trafficking paraphernalia listed above.  During his safety valve proffer, defendant explained that in the early morning hours of January 17, 2007, he "cooked" powder cocaine into crack cocaine in the apartment.  Defendant further explained that he used the glass beaker to cook the cocaine into crack using the baking soda, he used the scale to measure out quantities of crack, he used the razor blade and plate to remove excess crack, and then put the leftover powder cocaine and crack cocaine into the vacuum with coffee grounds to mask the smell of the drugs.

After his arrest, defendant spoke to OPD Officer Larry Robertson about the gun in the master bedroom closet.  Defendant told Officer Robertson that he (defendant) got the gun from an individual named Deshawn McMurray, who is now deceased.  Indeed, in his plea agreement, defendant admitted that he had previously been aware of the presence of the firearm in the master bedroom closet.  During his safety valve proffer, however, defendant told a different story.  Defendant now claims that he never possessed the firearm, that it belonged to his girlfriend Keller (who herself received it from a woman who is now dead), and that he lied to Officer Robertson shortly after his arrest in an attempt to protect Keller from adverse housing assistance consequences.  As explained below, defendant did possess that gun and is now lying in an effort to take advantage of the safety valve.  Defendant does not deserve that relief.

### E. Defendant Was Previously Arrested With Cocaine and Possessed a Firearm in His Bedroom Closet

This is not the first time defendant kept a gun in his bedroom closet while also possessing

UNITED STATES' SENTENCING MEMORANDUM
FOR DEFENDANT JAMES EARL KELLEY         4

narcotics for sale. In the early morning hours of October 4, 1992, OPD officers executed an arrest warrant for defendant based on his sale of narcotics to an undercover officer. Defendant was sleeping on the couch and was arrested pursuant to the warrant. Another occupant of the home gave police permission to search the house, saying, "Go ahead officer. You can search anywhere you like. I told him not to bring that stuff into my house." In one of the bedrooms police found indicia to defendant on the dresser along with a sandwich bag containing cocaine. On the floor of the closet police retrieved a 9mm Interarms semi-automatic pistol loaded with nine rounds of ammunition. Also in the closet police found $4,629 in cash (7x$100, 12x$50, 88x$20, 88x$10, 92x$5, 229x$1). *See* Ex. F.

## IV.
## SENTENCING GUIDELINES CALCULATIONS

Both the government and the USPO believe the Court should calculate defendant's sentencing guidelines offense level as follows:

| | | | |
|---|---|---|---|
| Base Offense Level: | 32 | | U.S.S.G. § 2D1.1(c)(4) (1,000 or more but less than 3,000 kilograms of marijuana; app. note 10) |
| | + 2 | | U.S.S.G. § 2D1.1(b)(1) (dangerous weapon - firearm) |
| | + 2 | | U.S.S.G. § 3C1.2 (reckless endangerment) |
| | − 3 | | U.S.S.G. § 3E1.1(a) & (b) (acceptance of responsibility) |
| Total Offense Level | 33 | | |

(PSR ¶¶18-28).

## V.
## DISCUSSION OF GUIDELINES CALCULATIONS

**A.   U.S.S.G. § 2D1.1(c)(4) (base offense level)**

Defendant admitted in the factual basis section of his plea agreement that he distributed, or possessed with intent to distribute 397.4 grams of crack cocaine and 124.2 grams of powder cocaine, which results in a marijuana equivalent of 2,687.42 kilograms. This puts defendant's base offense level at 32. (PSR ¶¶ 12, 18).

**B.    U.S.S.G. § 2D1.1(b)(1) (dangerous weapon - firearm)**

Section 2D1.1(b)(1) requires an upward adjustment of two levels if a dangerous weapon (including a firearm) was possessed. Application Note 3 explains that the two-level enhancement is to be broadly applied and states:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was <u>present</u>, unless it is <u>clearly improbable</u> that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1(b)(1), App. Note 3 (emphasis added).

The Ninth Circuit has made it clear that "in applying this enhancement, 'the court need not find a connection between the firearm and the offense. If it finds that the defendant possessed the weapon during the commission of the offense, the enhancement is appropriate.'" *United States v. Lopez-Sandoval*, 146 F.3d 712, 714 (9th Cir. 1998)(*quoting United States v. Diego Restrepo*, 884 F.2d 1294, 1296 (9th Cir. 1989)). The government bears the burden of proving by a preponderance of the evidence that the defendant possessed the firearm. *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir. 1997). Once met, "the burden of proof is on the defendant to prove that it is clearly improbable that he possessed a weapon in connection with the offense." *United States v. Nelson*, 222 F.3d 545, 549 (9th Cir. 2000)(*citing Restrepo*, 884 F.2d at 1296 ("The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.")).

In this case, the facts establish by a preponderance of the evidence that defendant possessed the firearm in the closet of the Adeline Street apartment. First, defendant admits using the Adeline Street apartment to store and manufacture narcotics. Second, defendant admitting staying at the apartment and indicia with his name and the Adeline street apartment address were found in the master bedroom. Third, the gun was loaded, had an obliterated serial number and was easily accessible in the closet, exactly where one would expect a drug trafficker to keep his firearm to protect himself and his drugs. Fourth, defendant admitted that he was aware of the presence of the firearm in the closet and had been aware of it for months. Fifth, defendant admitted to OPD Officer Robertson that he (the defendant) got the gun from Deshawn

UNITED STATES' SENTENCING MEMORANDUM
FOR DEFENDANT JAMES EARL KELLEY         6

McMurray. And sixth, defendant previously kept a loaded gun – also a 9mm semi-automatic pistol) – in the closet when he possessed cocaine for sale. Thus, defendant clearly possessed the firearm at the time of the offenses at issue in this case and cannot establish that it is clearly improbable this loaded gun with an obliterated serial number was not connected to his drug trafficking. The two-point enhancement should therefore be applied. (PSR ¶¶ 11, 19).

### C.    U.S.S.G. § 3C1.2 (reckless endangerment)

Defendant in this case engaged in a dangerous – indeed, potentially deadly – high speed chase with the police that ultimately ended with defendant flipping his truck with his pregnant girlfriend inside on the Bay Bridge at rush hour. As defendant clearly concedes in his plea agreement, he "recklessly created a substantial risk of death or serious bodily injury to agents, officers, and the public in the course of fleeing from law enforcement personnel." The government, defendant, and the USPO all agree that the two-level enhancement pursuant to U.S.S.G. § 3C1.2 is deserved. (PSR ¶ 22).

### D.    U.S.S.G. § 3E1.1 (acceptance of responsibility)

The government respectfully recommends that the defendant be granted a three-point reduction in offense level under U.S.S.G. §§ 3E1.1(a) and (b) for acceptance of responsibility.

### E.    U.S.S.G. §§ 2D1.1(b)(11), 5C1.2 (safety valve)

A defendant is not entitled to a two-level reduction under §§ 2D1.1(b)(11), and 5C1.2 if he possessed a firearm or other dangerous weapon in connection with the offense. Here, defendant cannot prove by a preponderance of the evidence that he did not possess the loaded semi-automatic pistol with an obliterated serial number in connection with his drug trafficking. Accordingly, defendant should not receive the two-level reduction for safety valve, even though he has satisfied the other four criteria for eligibility.

### F.    Ultimate Guideline Offense Level and Guideline Range

With an adjusted offense level of 33 and a criminal history category of I, the applicable advisory guideline range is 135-168 months imprisonment. (PSR ¶ 58). The government, for the reasons set forth below, believes that the Court should impose a sentence at the high-end of the guideline range, namely, 168 months imprisonment. Such a sentence is not only supported by

UNITED STATES' SENTENCING MEMORANDUM
FOR DEFENDANT JAMES EARL KELLEY          7

the guidelines promulgated by the United States Sentencing Commission, but it is also justified by the sentencing factors set forth by Congress in 18 U.S.C. § 3553(a).

## VI.

## STATUTORY SENTENCING FACTORS

### A.  The Sentencing Guidelines Post-*Booker*

Under the Sentencing Reform Act as modified by *United States v. Booker*, 543 U.S. 220 (2005), this Court must analyze and consider the guideline factors before imposing sentences in federal criminal cases.  543 U.S. at 259, 261 (noting that Sentencing Reform Act "nonetheless requires judges to take account of the Guidelines together with other sentencing goals"); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (noting that the "[c]ontinuing duty of district courts to consult the Guidelines is statutory").  This Court, having calculated the guideline range in the traditional fashion, should then look to the factors set forth by Congress in 18 U.S.C. § 3553(a) to determine a reasonable sentence for defendant.

### B.  Consideration of the 3553(a) Factors

#### 1.  Nature and Circumstances of the Offense and History and Characteristics of Defendant

##### a.  Nature and Circumstances of the Offense

The nature and circumstances of the offense demonstrate the need for a 168-month sentence.  As explained in detail above, defendant engaged in multiple narcotics transactions involving significant quantities of crack cocaine.  He cooked this crack cocaine in the apartment he shared with his pregnant girlfriend and her two children.  While he and his pregnant girlfriend left to conduct a drug deal they left cocaine and other narcotics trafficking paraphernalia out in plain view on the dining room table and in the kitchen while a ten and seven-year-old were home. He fled from the police in an incredibly dangerous high speed chase that created an extraordinary risk of death and injury to himself, his pregnant girlfriend, law enforcement officers, and unsuspecting members of the general public.  He kept a loaded firearm with an obliterated serial number in his closet.  Defendant's conduct demonstrates not only his willingness to profit from the suffering of others by spreading crack cocaine in the community but also his refusal to

conform his conduct to the law and his blatant disregard for the safety and welfare of others. Clearly, the nature and circumstances of the offense demonstrate that defendant poses, and will continue to pose unless incarcerated for a significant period of time, a danger to the community.

### b. History and Characteristics of the Defendant

#### (1) *Criminal History*

This is not the first time defendant has engaged in drug trafficking. As detailed above, defendant previously sold narcotics to an undercover officer and possessed cocaine for sale, thousands of dollars in drug proceeds, and – just like now – kept a loaded firearm in his closet for protection. Defendant's criminal history demonstrates his continued willingness to profit from the sale of dangerous drugs and to arm himself in the process.

#### (2) *Personal History and Characteristics*

The details of defendant's personal life also support the requested sentence of 168 months imprisonment. Although defendant had a turbulent childhood, he has previously maintained legitimate employment and has no excuse for again engaging in a criminal lifestyle.

### 2. Need to Reflect the Seriousness of the Offense

The offense in question, a narcotics trafficking offense involving a firearm by an individual with a history of narcotics trafficking and firearm possession is extremely serious. Defendant endangered the lives of his girlfriend, her children, police, and the public. A sentence of 168 months imprisonment is necessary to reflect the seriousness of defendant's crime.

### 3. Deterrence of Criminal Conduct

By imposing the high-end 168-month guideline sentence on defendant the Court has the opportunity to have a strong specific and general deterrent effect. First, defendant will be specifically deterred from committing more crimes by knowing that another very lengthy prison term awaits him should he re-offend. Perhaps more importantly, this Court has an opportunity to send a message to others in Oakland, a city increasingly ravaged by drug trafficking and gun crimes, that drug trafficking and firearm possession by those with criminal records will lead to lengthy terms of federal imprisonment. Through the 168-month sentence requested by the government, this Court can generally deter others from engaging in the same conduct as the

defendant and thereby make the community of Oakland a safer place.

### 4. Need to Protect the Public

The public needs to be protected from recidivists, like defendant, who continue to sell drugs and possess firearms. A 168-month sentence of imprisonment, along with the statutorily mandated 5-year term of supervised release, will without question protect the public.

### 5. Need to Provide Defendant with Education

Defendant will have access to many programs in the prison system to which he can avail himself. Neither the presence nor absence of any further educational programs should weigh heavily in this Court's sentencing determination.

### 6. Need to Avoid Unwarranted Disparity in Sentences

Finally, a sentence in accordance with the guidelines also properly accounts for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Indeed, a sentence within the sentencing guidelines range is the best way to satisfy this factor.

## VII.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the sentencing guidelines and sentencing factors set forth in section 3553(a), sentence defendant to the high-end of the applicable sentencing guideline range, namely, 168 months imprisonment, impose a five-year term of supervised release (under the terms and conditions recommended by the USPO), and order defendant to pay a $100 special assessment.

DATED: August 26, 2008                     Respectfully submitted,

                                           JOSEPH P. RUSSONIELLO
                                           United States Attorney


                                           _____/s/_____
                                           GARTH HIRE
                                           Assistant United States Attorney