1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  GARTH HIRE (CABN 187330)
   Assistant United States Attorney
5
       1301 Clay Street, Suite 340-S
6      Oakland, California 94612
       Telephone:  (510) 637-3929
7      Facsimile:   (510) 637-3724
       E-Mail:      Garth.Hire@usdoj.gov
8
   Attorneys for Plaintiff
9

10                      UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                              OAKLAND DIVISION

13 | UNITED STATES OF AMERICA, | ) | No. CR 07-00323 DLJ |
|---|---|---|
14 | Plaintiff, | ) ) | UNITED STATES' REPLY TO DEFENDANT JAMES EARL KELLEY'S SENTENCING MEMORANDUM |
15 | v. | ) ) | |
16 | JAMES EARL KELLEY, | ) ) | Hearing Date:  August 29, 2008 Hearing Time:   10:00 a.m. |
17 | Defendant. | ) ) | |
18 | | ) | |

UNITED STATES' REPLY TO DEFENDANT JAMES
EARL KELLEY'S SENTENCING MEMORANDUM

## I.

## INTRODUCTION

Defendant's sentencing memorandum offers this Court incomplete legal analysis and factual absurdity delivered by hearsay in support of defendant's request for a sentence below the applicable mandatory minimum. As explained below, defendant has earned a two-level enhancement for possessing a loaded firearm with an obliterated serial number in his closet while possessing and manufacturing narcotics for sale. This conduct also makes him ineligible for safety valve relief. Accordingly, defendant is subject to a ten-year mandatory minimum sentence and a guideline range of 135-168 months. Due to the nature of his actions he deserves a sentence at the high-end of that range.

## II.

## DEFENDANT POSSESSED A LOADED FIREARM IN HIS CLOSET

The facts in this case clearly establish that defendant possessed a loaded firearm with an obliterated serial number in the master bedroom closet of the apartment he shared with his girlfriend. Defendant admitted using the Adeline Street apartment to store and manufacture narcotics, admitted staying at the apartment, and admitted being aware for months that the gun was in the closet (the gun was easily accessible in the closet, exactly where one would expect a drug trafficker to keep his firearm to protect himself and his drugs). More importantly, as defendant himself concedes in his sentencing memorandum, defendant "admitted that following his arrest he had informed Officer Robertson that he had purchased the gun on the street." (Deft. Mem. at 5:9-10). Finally, the defendant previously kept a loaded gun – also a 9mm semi-automatic pistol – in the closet when he possessed cocaine for sale in 1992.

Defendant's attempts to provide an innocent explanation for the presence of the firearm in his closet are an affront to common sense. Defendant would like this Court to believe that a murdered woman named LaToya Bell who was being brutalized by her boyfriend kept the gun in her friend Erica Keller's apartment to protect herself. This is absurd. The idea that she would seek refuge at this location and then make use of the gun makes absolutely no sense. A woman who fears for her life from her boyfriend doesn't keep a loaded gun in her friend's closet where it

UNITED STATES' REPLY TO DEFENDANT JAMES
EARL KELLEY'S SENTENCING MEMORANDUM    1

can be of no use to her whatsoever. Defendant's investigator spends an extraordinary amount of time and effort establishing that Bell was battered and murdered by her boyfriend. The government does not dispute the truth of this theory, only its relevance. In the end, whether Bell's boyfriend murdered her is completely irrelevant to the presence of the gun in defendant's closet.

According to defendant, Ms. Bell was murdered June 11, 2006. This would mean that Erica Keller, mother of two young children, left her dead friend's loaded semi-automatic pistol with an obliterated serial number in her home for seven months before it was seized by the police on January 17, 2007. This is a ridiculous proposition which flies in the face of reason. No mother with two young children would just leave this gun in her home. That's because this is not the truth. The truth is what defendant told Officer Robertson shortly after his arrest: that defendant purchased this gun on the street. Finally, the Court should take note of *how* defendant advances his cockamamie story, namely, through hearsay in a declaration by the defendant's investigator. Neither defendant nor his girlfriend had the courage of their convictions to submit sworn declarations to the Court to explain the presence of the firearm in their closet. Why? Because they clearly do not want to suffer the penalty for perjury, which is exactly what they would be committing if they told this fantastic story to the Court under oath.

### III.
### CALCULATION OF THE SENTENCING GUIDELINE RANGE AND SAFETY VALVE RELIEF FROM THE MANDATORY MINIMUM SENTNECE

Defendant's memorandum glosses over the fact that this Court must make three important factual determinations and must do so in the order they appear in the sentencing guidelines manual. U.S.S.G. § 1B1.1; *United States v. Partlow*, 159 F.3d 1218 (9th Cir. 1998)(reversing sentence under § 2L1.1(b) where court first increased the offense level to 18 for substantial risk of injury under subsection (5) and then deducted three levels because the offense was not for profit under section (1)). First, this Court must determine whether the government has proven by a preponderance of the evidence that defendant possessed the firearm in his closet. If so, this Court must next determine whether the defendant has established that it is clearly improbable

that the weapon was connected with the offense. If he cannot, this Court must apply the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). Finally, this Court must independently determine whether the defendant has proven by a preponderance of the evidence that he did not possess the loaded semi-automatic pistol with an obliterated serial number in connection with his drug trafficking. If not, the Court may not apply a two-level downward adjustment pursuant to U.S.S.G. §§ 2D1.1(b)(11), and 5C1.2, and may not impose a sentence below the otherwise applicable ten-year mandatory minimum sentence of imprisonment pursuant to 18 U.S.C. § 3553(f).

      A.      **A Two-Level Upward Adjustment Is Required Under U.S.S.G. § 2D1.1(b)(1) Because Defendant Possessed a Firearm During His Drug Trafficking**

As the government explained in its sentencing memorandum, the government bears the burden of proving by a preponderance of the evidence that the defendant possessed the firearm. *United States v. Cazares*, 121 F.3d 1241, 1244 (9th Cir. 1997). Once met, "the burden of proof is on the defendant to prove that it is clearly improbable that he possessed a weapon in connection with the offense." *United States v. Nelson*, 222 F.3d 545, 549 (9th Cir. 2000)(*citing Restrepo*, 884 F.2d at 1296 ("The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.")). "The court need not find a connection between the firearm and the offense. If it finds that the defendant possessed the weapon during the commission of the offense, the enhancement is appropriate.'" *United States v. Lopez-Sandoval*, 146 F.3d 712, 714 (9th Cir. 1998)(*quoting United States v. Diego Restrepo*, 884 F.2d 1294, 1296 (9th Cir. 1989)).

The government has clearly met its burden of establishing by a mere preponderance of the evidence that defendant possessed the firearm:

(1) Defendant admits using the Adeline Street apartment to store and manufacture narcotics.

(2) Defendant admitted staying at the apartment.

(3) Defendant admitted being aware for months that the gun was in his bedroom closet.

UNITED STATES' REPLY TO DEFENDANT JAMES
EARL KELLEY'S SENTENCING MEMORANDUM    3

    (4)    The gun was loaded with an obliterated serial number and was easily accessible in the closet (exactly where one would expect a drug trafficker to keep his firearm to protect himself and his drugs).

    (5)    Defendant admits telling OPD Officer Robertson that defendant purchased the gun on the street.

    (6)    Defendant previously kept a loaded gun – also a 9mm semi-automatic pistol – in his closet when he possessed cocaine for sale in 1992.

The only evidence that exists to the contrary is the hearsay statements of defendant and his girlfriend, submitted through the declaration of a defense investigator, that fail to comport with reason, common sense, and defendant's own post-arrest confession. Based on this evidence, the government has clearly met its burden to show defendant possessed the firearm and defendant has woefully failed to meet his burden of showing the clear improbability that he possessed the weapon in connection with his drug trafficking activities. Accordingly, this Court must apply the two-level enhancement pursuant to § 2D1.1(b)(1).

### B. Defendant is Not Entitled to a Two-Level Reduction or a Below-Guideline Sentence Because He Failed to Satisfy the Safety Valve

A defendant is not entitled to a two-level reduction under §§ 2D1.1(b)(11), and 5C1.2, or a sentence below the otherwise applicable mandatory minimum if he possessed a firearm or other dangerous weapon in connection with the offense. Here, defendant has failed to carry his burden of proving by a preponderance of the evidence that he did not possess the loaded semi-automatic pistol with an obliterated serial number in connection with his drug trafficking, for the reasons stated above. Accordingly, defendant must not receive a two-level reduction pursuant to §§ 2D1.1(b)(11), and 5C1.2 and he must receive a sentence of at least ten years imprisonment because he is not entitled to relief from the mandatory minimum pursuant to 18 U.S.C. § 3553(f).

## IV.
## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court, taking into consideration the sentencing guidelines and sentencing factors set forth in section 3553(a),

sentence defendant to the high-end of the applicable sentencing guideline range, namely, 168 months imprisonment, impose a five-year term of supervised release (under the terms and conditions recommended by the USPO and as agreed to by the defendant), and order defendant to pay a $100 special assessment.

DATED: August 28, 2008              Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


            /s/
GARTH HIRE
Assistant United States Attorney